THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BETHANY BOARDWALK
GROUP LLC,
    *Plaintiff*,

    v.                         Civil Action No. ELH-18-3918

EVEREST SECURITY INSURANCE
COMPANY,
    *Defendant*.

**MEMORANDUM OPINION**

This Memorandum Opinion resolves multiple motions pertaining to an insurance dispute

that arises from losses sustained by a hotel due to a windstorm that occurred on September 9, 2018.

Plaintiff Bethany Boardwalk Group LLC ("Bethany")[1] owns and operates a Marriot

franchise in Bethany Beach, Delaware, known as the Bethany Beach Ocean Suites Residence Inn

(the "Hotel").  ECF 1, ¶ 2.  After the windstorm in September 2018, plaintiff submitted a claim

under its insurance policy with defendant Everest Security Insurance Company ("Everest"),

seeking to recover costs incurred to replace the Hotel's roof and for interior water damage, as well

lost business income.  Everest denied the claim on the ground that the Hotel's roof was defective,

and therefore Bethany's losses were subject to the policy's exclusion for faulty workmanship.

Thereafter, Bethany filed suit against Everest, alleging breach of contract.  ECF 1 (the

"Complaint"). [2]  Plaintiff sought a declaration that the policy covers the storm "as an occurrence

and a specified cause of loss," and that Everest is liable for all losses sustained by the Hotel "as a

---

[1] In some submissions, plaintiff puts a comma between Group and LLC.  *See*, *e.g.*, ECF
36.

[2] Jurisdiction is based on diversity of citizenship, under 28 U.S.C. § 1332.

direct or consequent loss for the wind event."  *Id.* ¶ 28(a).  In addition to damages, Bethany requested prejudgment interest.  *Id.* ¶ 28(b).

The parties agreed that the material facts were undisputed.  *See* ECF 25; ECF 27-2; ECF 28-1 at 6.  Accordingly, they asked to proceed by way of pre-discovery cross-motions for summary judgment, which I permitted.  ECF 26.

Bethany moved for summary judgment as to Everest's "liability only, leaving damages to be determined at a later date."  ECF 27.  Everest filed a cross-motion for summary judgment. ECF 28.  By Memorandum Opinion (ECF 34) and Order (ECF 35) of March 5, 2020, I granted Bethany's motion in part and denied it in part.  In particular, I ruled that Everest is liable for losses that the Hotel sustained due to interior water damage and lost business income, but not for the cost of repairing or replacing the Hotel's roof.  *See* ECF 34 at 30-34; ECF 35.  And, I denied Everest's Motion.  ECF 35.

Bethany subsequently filed a "Motion For Partial Reconsideration" (ECF 36), supported by a memorandum.  ECF 36-1 (collectively, the "Motion for Reconsideration").  Bethany also submitted exhibits.  ECF 36-1 at 17-19; ECF 36-2.  In addition, Bethany moved for leave to file an "Amended and Supplemented Complaint" (ECF 37), supported by a memorandum.  ECF 37-1 (collectively, the "Motion to Amend").  Exhibits were also appended to the Motion to Amend.  *See* ECF 37.  The proposed amended complaint is docketed at ECF 37 at 7-25, 45-65.

Everest opposes both motions.  ECF 48 (opposition to Motion for Reconsideration); ECF 49 (opposition to Motion to Amend).  And, Bethany has replied to both submissions.  ECF 50 (reply to ECF 48); ECF 51 (reply to ECF 49).

In addition, Everest has moved for summary judgment (ECF 52), supported by one exhibit. ECF 52-1.  Everest asserts that Bethany is not entitled to recover under the insurance policy

because Everest's liability as to the water damage and lost business income does not exceed the insurance policy's $100,000 deductible. ECF 52 at 2-4. Bethany has filed an opposition. ECF 53. It concedes that if its Motion for Reconsideration and Motion to Amend are denied, then "damages will not exceed the deductible." *Id.* at 2. Everest has replied. ECF 54.

The motions have been fully briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall deny Bethany's Motion for Reconsideration (ECF 36) and its Motion to Amend (ECF 37), and I shall grant Everest's summary judgment motion (ECF 52).

## I. Background[3]

As indicated, the material facts at issue in the parties' prior cross-motions for summary judgment were undisputed. Bethany owns and operates the Hotel in Delaware. ECF 27-3, ¶ 4. Built in 2015, the Hotel is comprised of two structures, each of which is three stories, referred to as the "North Building" and the "South Building." *See id.* ¶ 7.

During the construction of the Hotel, CCS Roofing LLC ("CCS") was retained to install a thermoplastic polyolefin ("TPO") roof system. ECF 27-6 at 2. The roof system was manufactured by Firestone Building Products ("Firestone") and guaranteed by Firestone's 20-year "Red Shield Warranty." *Id.* CCS was a Firestone-licensed applicator. *Id.*

Installation of the TPO roof system unfolded in three phases. First, CCS covered the concrete roof deck with "polyiso insulation boards," rigid foam insulation sandwiched between reinforced paper material. ECF 27-7 at 7. CCS then stacked the boards in layers to form a roof slope. *Id.* Thereafter, CCS glued a TPO membrane atop the insulation boards to form the roof's

---

[3] I incorporate here the factual background set forth in my Memorandum Opinion of March 5, 2020. See ECF 34 at 2-8. However, I shall restate the key details that give rise to the case, as some context is necessary to understand and resolve the current disputes.

surface.  ECF 27-6 at 3.  In other words, the Hotel roof consisted of three layers: the concrete roof deck, insulation boards, and a TPO membrane.

On September 9, 2018, a storm hit Bethany Beach, generating wind gusts of up to 39 miles per hour.  *Id.*; ECF 27-7 at 3; *see also* ECF 27-3, ¶ 8.  It was the third-highest wind speed recorded in the area since 2015, but well below the 55-m.p.h. limit for a properly constructed TPO roof, according to Firestone's warranty.  *Id.* at 7.  The storm deposited between 0.11 and 0.50 inches of rain over a 48-hour period.  *Id.* at 3.

During the storm, a roughly 50-foot section of the TPO membrane of the North Building's roof "peeled back," exposing the polyiso boards to the elements.  *Id.* at 7; *see also* ECF 27-3, ¶ 8; ECF 27-6 at 3.  As a result of the roof blow-off, water infiltrated the North Building at two locations, causing interior damage to carpeting and drywall.  ECF 27-6 at 4.  Plaintiff incurred significant damages, including the cost of repairs to the roof and to the interior of the Hotel, as well as lost business income.  ECF 27-3, ¶ 12.

At the time, the Hotel was insured under a one-year commercial property casualty insurance policy issued by Everest on July 2, 2018.  *Id.* ¶ 5; ECF 27-4 (the "Policy").  The Policy covered $9,669,000 for the North Building; $3,225,000 for business personal property; and $2,200,000 for loss of business income.  ECF 27-4 at 17.  Bethany submitted a claim to Everest under the Policy, including for "roof damage."  ECF 27-8 at 2; *see* ECF 27-3, ¶ 14.

The Policy contains three forms relevant to coverage in this case: (1) the "Building and Personal Property Coverage Form," ECF 27-4 at 38-53; (2) the "Causes of Loss - Special Form," *id.* at 67-76; and (3) the "Wind-Driven Rain Limitation."  *Id.* at 65.

Regarding coverage generally, the "Building and Personal Property Coverage Form" provides, *id.* at 38:

### A.  Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

With respect to lost business income, the Policy states that Everest will pay for "actual loss of Business Income" sustained "due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"  *Id.* at 54.  However, in order for lost business income to be covered, the "loss or damage must be caused by or result from a Covered Cause of Loss."  *Id.*

Section A of the "Causes of Loss - Special Form" defines "Covered Causes of Loss" as any "direct physical loss unless the loss is excluded or limited in this policy."  *Id.* at 67.  Further, Section G states: "Specified causes of loss mean the following: fire; lightening; explosion; *windstorm* or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."  *Id.* at 76 (emphasis added).

Section B delineates the various events that are excluded from coverage under the Policy.  Section B(1) provides that Everest "will not pay for loss or damage caused directly or indirectly" by (a) "Ordinance Or Law"; (b) "Earth Movement"; (c) "Governmental Action"; (d) "Nuclear Hazard"; (e) "Utility Services"; (f) "War And Military Action"; (g) "Water"; and (h) "Fungus, Wet Rot, Dry Rot And Bacteria."  *Id.* at 67-69.  Section B(1) contains what is known in the industry as an "anti-concurrent cause of loss of provision."  *See* ECF 27-1 at 13.  That clause specifies that loss or damage caused by these events "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  ECF 27-4 at 67.

A second set of exclusions, located in Section B(2), provides, in relevant part, *id.* at 69:

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

* * *

**d.(1)**  Wear and tear;
   **(2)**  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

* * *

 But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage  caused by that "specified cause of loss" or building glass breakage.

Finally, Section B(3) contains a third set of exclusions.  It states, *id.* at 70-71:

**3.**  We will not pay for loss or damages caused by or resulting from any of the following, **3.a.** through **3.c**.  But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage
caused by that Covered Cause of Loss.

   **a.**  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

   **b.**  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   **c.**  Faulty, inadequate or defective:
     **(1)**  Planning, zoning, development, surveying, siting;
     **(2)**  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
     **(3)**  Materials used in repair, construction, renovation or remodeling; or
     **(4)**  Maintenance; of part or all of any property on or off the described premises.

The parties acknowledge that the language in Section B(3) that restores coverage for a covered cause of loss that results after an excluded cause of loss is an "ensuing loss clause."  *See* ECF 27-1 at 9, 14; ECF 28-1 at 8.

Also relevant here, Section C of the Cause of Loss - Special Form, titled "Limitations," states, *id.* at 72:

The following limitations apply to all policy forms and endorsements unless otherwise stated:

1.  We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

* * *

c.   The interior of any building or structure, or to personal property in the building

or structure, caused by or resulting from rain, snow, sleet, sleet, ice, sand, or dust, whether driven by wind or not, unless:

(1) The damage or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss of damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

The "Wind-Driven Rain Limitation" is a separate document that modifies the limitation in

Section C.  ECF 27-4 at 66.  The Wind-Driven Rain Limitation provides, in relevant part, *id.* at

66:

Paragraph **1.c** of Section **C. Limitations** of the Causes of Loss - Special Form is replaced by the following:

c. The interior of any building or structure:

(1) Caused by or resulting from rain driven by wind unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain enters.

The most we will pay under this limitation for loss of or damage to any building or structure is the Limit of Insurance shown in the Schedule.

We will not pay for loss of or damage to any building or structure when the roof or walls of that building or structure are under repair, renovation or replacement at the time of loss.

The Policy provides coverage up to $250,000 for losses that qualify under the Wind-Driven

Rain Limitation.  *Id.*

After Bethany filed its insurance claim, Everest retained Applied Engineering & Technology, P.C. ("AET") to determine the cause of the roof malfunction.  ECF 27-3, ¶ 15; *see* ECF 27-6 at 2.  After two inspections in the Fall of 2018, AET issued a report concluding that "the partial roof-blow incident was mainly caused by improper installation of the Firestone TPO roof system."  ECF 27-7 at 7; *see also* ECF 27-6 at 2.  In particular, AET determined that defective installation of the insulation boards "compromised the roof system's resistance to wind uplift pressures."  ECF 27-7 at 7.  According to AET, the polyiso boards were defective because they were not properly bonded during installation.  *Id.*; *see* ECF 34 at 7-8.

Everest denied Bethany's claim for coverage in a letter dated December 5, 2018.  ECF 27-8.  This suit followed.  ECF 1; *see* ECF 34 at 11.

As indicated, Bethany previously moved for partial summary judgment as to Everest's liability.  ECF 27.  Of relevance here, Bethany argued that Everest was liable for the cost of "the reconstruction of the [Hotel] roof."  ECF 27-1 at 18.  Everest also moved for summary judgment. ECF 28.  I granted Bethany's motion in part and denied it in part.  ECF 34; ECF 35.  And, I denied Everest's motion.  *Id.*

My analysis, which applied Maryland law, focused primarily on the scope of the Policy's "ensuing loss clause" and its interaction with other Policy provisions.  *See* ECF 34 at 12, 15-16, 34.  Specifically, I determined that, pursuant to the ensuing loss clause, Everest is liable up to $250,000 for the losses that the Hotel sustained due to interior water damage, less the deductible, and for lost business income.  *Id.* at 30, 32; ECF 35.  However, I determined that Everest is not liable for the cost to repair or replace the Hotel's roof because the roof was improperly installed, and those losses are excluded from coverage under the Policy's faulty workmanship exclusion.

-8-

ECF 34 at 30; ECF 35.  Because I concluded that Everest was liable to Bethany for some of the Hotel's losses, I denied Everest's motion for summary judgment.  ECF 34 at 32, 33; ECF 35.

The pending motions followed.  In its Motion for Reconsideration, plaintiff relies, *inter alia*, on a report of March 27, 2020.  ECF 36-2 at 7-12.  It indicates that the cost of repair attributable to the polyiso boards was $135,000, and the cost to replace the TPO membrane amounted to $150,000.  *See* ECF 36-1 at 9.  Notably, this report in support was not previously submitted to the Court in support of Bethany's earlier summary judgment motion.

Additional facts are included, *infra*.

## II.  Discussion

In the Motion for Reconsideration, Bethany asks the Court to hold Everest liable for the cost of replacing *part* of the Hotel roof system.  ECF 36-1 at 16. Bethany contends that, at the very least, the Policy covers the repair of the TPO membrane because that layer of the roof was not defective; only the insulation boards were flawed.  *Id.*

Bethany's Motion to Amend has two principal aims.  First, Bethany seeks to add facts to the proposed amended complaint that support the Motion for Reconsideration.  ECF 37-1 at 1. Second, Bethany seeks to add a new basis for liability under the breach of contract claim, *i.e.*, "the costs and expenses of collateral litigation in which it was forced to engage" because of Everest's denial of coverage.  ECF 37 at 63; *see* ECF 37-1 at 1, 5-7.

As noted, Everest's summary judgment motion essentially contends that under the Court's March 2020 ruling (ECF 34, ECF 35), Bethany cannot recover damages because its losses from interior water damage and lost business income do not exceed the Policy's deductible of $100,000. ECF 52 at 2-4.

I address each motion, in turn.

## A.  Motion for Reconsideration

Bethany argues that reconsideration is warranted because the Memorandum Opinion "misapprehended the facts related to the damage to the roof by the windstorm and did not take into account the two distinct and separable components of the roof, specifically the polyiso boards . . . and the TPO membrane . . . ."  ECF 36 at 2.  In Bethany's view, because of the "distinction" between the defective polyiso boards and the non-defective membrane, the Policy's faulty workmanship exclusion only excludes from coverage the cost of replacing the boards.  ECF 36-1 at 12.  Accordingly, Bethany maintains that Everest should be liable for the cost of replacing the roof membrane, which Bethany values at $150,000, but not for the cost of repairing the insulation boards, which Bethany values at $135,000.  *Id.* at 12.

Plaintiff maintains that, for purposes of recovery under the Policy, the cost of the roof repairs can be distilled into two separate components: the cost of replacing the polyiso boards, which were improperly installed, and the cost of replacing the TPO membrane.  ECF 36-1 at 9.  And, it argues that any exclusion should apply only to the cost of repair related to the defective installation of the polyiso boards.  *Id.* at 12, 13.  As noted, with Bethany's Motion for Reconsideration, it submitted a report of March 27, 2020 (ECF 36-2 at 14), indicating that the cost of repair attributable to the polyiso boards was $135,000, and the cost to replace the TPO membrane was $150,000.

Notably, Bethany concedes that in its prior summary judgment motion, it "did not distinguish between the two distinct components of the roof, one of which was defectively constructed and the other of which was not."  ECF 36-1 at 2; *see also id.* at 12 (stating that "this distinction was not emphasized" in the motion for summary judgment); ECF 50 at 3 (recognizing that "perhaps" this contention was "not clearly presented").  Moreover, it acknowledges that "it

-10-

was of the view that the wind, as an ensuing Covered Cause of Loss that damaged the roof, made Everest Security responsible for the full cost of fixing the full damaged portion of the roof . . . ." ECF 36-1 at 2; *see also* ECF 50 at 3, 10.  Now, according to plaintiff, it is merely "asking the Court to rule on the basis of more accurate and fully stated facts."  ECF 36-1 at 3. Because AET's report does not indicate that the TPO membrane was improperly installed, and thus did not contribute to the "roof blow-off," plaintiff insists it is entitled to damages to repair the TPO membrane.  *Id.* at 6-7.

Everest counters that the Motion for Reconsideration plainly fails to meet the standard for reconsideration of an interlocutory order.  ECF 48.  Further, Everest insists that Bethany's argument fails on the merits.  *Id.*

Motions for reconsideration of an interlocutory order are governed by Fed. R. Civ. P. 54(b). An order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

The Fourth Circuit has distinguished between Rule 54(b) and Rule 59(e), which governs reconsideration of final judgments, explaining that Rule 54(b) "involves broader flexibility" to account for new facts and arguments as the litigation unfolds.  *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).  However, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'"  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325).

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *accord Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality. *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

When applied to a court's interlocutory rulings, the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted). Accordingly, the Fourth Circuit has instructed that a court should revise an interlocutory order only to account for "'(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).

The first of these bases "account[s] for potentially different evidence discovered during litigation." *U.S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). However, the Fourth Circuit has "consistently affirmed denials of motions to reconsider summary judgment

rulings where the motion is merely a vessel for the very evidence that was initially lacking in opposition to summary judgment." *Carlson*, 856 F.3d at 326 (affirming denial of reconsideration requested under Rule 54(b)).

The Fourth Circuit has also colorfully explained how difficult it is to meet the third basis for reconsideration. It has said: "As we have noted on more than one occasion, '[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'" *U.S. Tobacco Coop.*, 899 F.3d at 258 (quoting *TFWS, Inc.*, 572 F.3d at 194).

Local Rule 105.10 further limits the Court's ability to entertain a motion for reconsideration. With exceptions not applicable here,[4] Local Rule 105.10 provides that "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." *See, e.g.*, *Direct Benefits, LLC v. TAC Fin., Inc.*, No. RDB-13-1185, 2019 WL 3804513, at *4 (D. Md. Aug. 13, 2019); *Humane Soc. of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. DKC-13-1822, 2017 WL 1426007, *5 (D. Md. Apr. 21, 2017).

However, the filing deadline for Bethany's Motion for Reconsideration was extended by Chief Judge Bredar in response to the COVID-19 pandemic. The Memorandum Opinion granting in part Bethany's motion for partial summary judgment was entered on March 5, 2020. Under normal circumstances, the filing deadline for a motion under Rule 54(b) would have been March 19, 2020, pursuant to Local Rule 105.10. But, Amended Standing Order 2020-03, issued March

---

[4] Local Rule 105.10 begins: "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60 . . . ." As discussed, a request for reconsideration of an interlocutory order is governed by Rule 54(b). Therefore, the exceptions to the fourteen-day requirement of Local Rule 105.10 do not apply here. In contrast, Rule 59 provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

13, 2020, extended filing deadlines set to fall between March 16, 2020, and March 27, 2020, by fourteen days.[5]  Bethany timely filed the Motion for Reconsideration on March 27, 2020, within the requisite period.

Bethany asserts: "While the Fourth Circuit has indicated a District Court *may* apply the law of the case factors, it has not mandated that the District Court do so or limit its analysis to these factors."  ECF 50 at 8 (emphasis in original).  In seeking reconsideration, Bethany does not rely on a change in the applicable law.  *Id.* at 13.  And, in its Reply, Bethany acknowledges that it "has not argued clear error causing manifest injustice."  *Id.* at 14.  But, it reiterates that the Court misapprehended the facts, and therefore it asks the Court "to clarify its ruling . . . ."  *Id.*

Nevertheless, Bethany insists that "[c]ase law and this Court's decision support[]" its position.  *Id.* at 15.  This argument is plainly self-defeating.  The Fourth Circuit has made quite clear that a court cannot grant reconsideration because case law supports a different conclusion.  Rather, the Court must have obviously been "dead wrong."  *U.S. Tobacco Coop.*, 899 F.3d at 258 (citation omitted).  Bethany does not so claim.

Moreover, Bethany asks the Court to adopt an argument that Bethany did not previously make but certainly could have made: the Policy's faulty workmanship exclusion excluded from coverage only the cost of replacing the defective component of the roof that caused the roof as a whole to fail, *i.e.*, the polyiso board layer.  It now urges, for the first time, that because there was

---

[5]  Amended Standing Order 2020-03 was subsequently amended by Standing Order 2020-05.  *See* ECF 93 and ECF 97 in *In re Standing Orders*, 1:00-mc-308.  Standing Order 2020-05, issued March 20, 2020, further extended filing deadlines within the relevant window.  *See* ECF 97 in *In re Standing Orders*, 1:00-mc-308.

no defect in the installation of the TPO membrane, it is entitled to recover damages for that portion

of the roof repair.[6]

I decline plaintiff's invitation to revisit my prior ruling based on the assertion of a

contention that was not initially raised.  *Cf. U.S. Tobacco Coop.*, 899 F.3d at 256 (stating that a

district court's discretion under Rule 54(b) is "'subject to the caveat that where litigants have once

battled for the court's decision, they should neither be required, nor without good reason permitted,

to battle for it again.'") (citation omitted); *Paulone v. City of Frederick*, Civ. No. WDQ-09-2007,

---

[6]  The doctrine of judicial estoppel has not been raised and I have not relied on it.  But, its principles are noteworthy.  "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation."  *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc*., 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)); *see Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007).  In addition, the doctrine "'generally prevents a party from prevailing *in one phase of a case* on an argument and then relying on a contradictory argument to prevail *in another phase*.'"  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdich*, 530 U.S. 211, 227, n.8 (2000)) (emphasis added).

An equitable doctrine, judicial estoppel is "designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *Martineau*, 934 F.3d at 393 (quoting *New Hampshire*, 532 U.S. at 749-50); *see Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998) (observing that judicial estoppel "exists to prevent litigants from playing 'fast and loose' with the courts").  But, judicial estoppel is applied cautiously.  *See Faggert & Frieden*, 65 F.3d at 29 (instructing that "courts must apply the doctrine with caution"); *accord Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 639 (E.D. Va. 2016) (observing that judicial estoppel is an "'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice'") (citation omitted).

In the Fourth Circuit, judicial estoppel is appropriate only where: "(1) the party sought to be estoped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estoped must be one of fact rather than law or legal theory; (3) the prior inconsistent position must have been accepted by the court; and (4) the party sought to be estoped must have intentionally misled the court to gain unfair advantage."  *Minnieland*, 867 F.3d at 458 (internal quotation marks and citation omitted); *see Martineau*, 934 F.3d at 393. This is a fact-intensive inquiry.  *See Martineau*, 934 F.3d at 394.

2010 WL 3000989, at *3 (D. Md. July 26, 2010) ("[A] party cannot get reconsideration on the basis of case law . . . available at the time of the court's order.")

Furthermore, Bethany does not cite any cases that stand for the principle Bethany asks this Court to enunciate.  Bethany concedes: "[N]o case appears to have directly addressed isolating the cost of repairing defective construction from the cost of repairing other related construction that was correctly done but damaged by an ensuing covered cause of loss."  ECF 36-1 at 14.

Plaintiff relies primarily on *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F. Supp. 2d 530 (D. Md. 2013), in support of the argument that this Court should parse the costs of repairing the faulty roof.  I discussed *Selective Way Ins. Co.* in the Memorandum Opinion.  ECF 34 at 24.  In *Selective Way*, 988 F. Supp. 2d 530, a water supply line came loose because of faulty installation.  *Id.* at 538.  The resulting leak caused water damage to a university building.  *Id.* at 532.  Chief Judge Bredar ruled that the ensuing loss clause in the plaintiff's insurance policy covered the water damage.  *Id.* at 541.  Notably, Chief Judge Bredar explicitly stated that the plaintiff in his case did not seek to recover under the policy for the cost of repair of the defective water line itself.  *Id.* at 541.  Thus, *Selective Way Ins. Co.* did not address the scope of the policy's faulty workmanship exclusion and, accordingly, does not support Bethany's position.

The other case cited by Bethany, *Costco Wholesale Corp. v. Commonwealth Ins. Co.*, 45 F. App'x 646 (9th Cir. 2002), interprets and applies an ensuing loss clause.  It does not support Bethany's position here.

Therefore, I turn to consider whether the discovery of "different evidence" warrants revision of my ruling.  *See U.S. Tobacco Coop.*, 899 F.3d at 256 (citation omitted).

It is not entirely clear whether Bethany actually claims "'potentially different evidence discovered during litigation.'"  *Id.* (citation omitted).  On the one hand, Bethany asserts that its

argument is based on the undisputed material facts in the summary judgment record, "together with limited additional facts supplied as part of this motion that are not subject to genuine dispute." ECF 36-1 at 9.  But, Bethany also suggests repeatedly that its request for reconsideration is supported entirely by the facts in the summary judgment record.  *See, e.g.*, ECF 36 at 2; ECF 50 at 7, 9.

In any event, Bethany has not identified new evidence that would have been material to the resolution of the cross-motions for summary judgment.  Bethany appended to its Motion for Reconsideration a report of December 2018, produced by the company it retained to repair the Hotel roof, Delmarva Roofing and Coating, Inc. ("Delmarva").  ECF 36-2 at 7-12.  Bethany cites the report as evidence for an undisputed fact: that only the insulation boards, not the TPO membrane, were defective.  *See* ECF 36-1 at 7.  This report was not included in the summary judgment record, however, even though, based on the date, it would have been available to Bethany at the relevant time.  *See* ECF 48 at 8; ECF 50 at 14.

Nor has Bethany demonstrated that reconsideration is warranted based on newly submitted evidence regarding the distinct costs for replacement of the TPO membrane and the insulation boards.  At summary judgment, Bethany did not present evidence regarding these distinct costs.  Now, Bethany has included the Affidavit of Brad Kauffman, with exhibits, dated March 25, 2020.  ECF 36-2 (the "Kauffman Affidavit").  Kauffman is the "head estimator of the commercial division of Delmarva."  *Id.* at 1, ¶ 3.  He avers that the cost of replacing the TPO membrane is $150,000, and the cost of replacing the insulation boards is $135,000.  ECF 36-2 at 5, ¶ 23; ECF 36-2 at 14.  Bethany relies on the Kaufman Affidavit to argue, for the first time, that Everest should be liable for the cost of replacing the non-defective TPO membrane. ECF 36-1 at 9-12.

Yet, Bethany previously argued that Everest was liable for the entire cost of "the reconstruction of the [Hotel] roof"—that is, the whole roof, not merely the insulation boards. ECF 27-1 at 18; *see* ECF 27-1 at 20 ("Bethany asked for coverage under the [Policy] . . . to replace the roof"); ECF 29-1 at 14 ("Bethany Boardwalk claims damages to replace the destroyed roof"). It is now pursuing a new claim, apparently on the theory that half a loaf is better than none.

The Kauffman Affidavit is not newly discovered evidence that supports Bethany's prior claim; rather, it supports a new, alternative theory about the scope of the faulty workmanship exclusion. Had Bethany sought to proceed on this more limited theory of liability at summary judgment, the relevant evidence would likely have been available. Bethany retained Delmarva in October 2018, *see* ECF 36-1 at 18, and moved for partial summary judgment in March 2019. *See Cf. Carlson*, 856 F.3d at 326 (reasoning that evidence "available *well before* summary judgment briefing" did not qualify as different and newly discovered) (emphasis in original); *Paulone*, 2010 WL 3000989, at *3 (denying a Rule 54(b) motion and stating: "[A] party cannot get reconsideration on the basis of . . . evidence available at the time of the court's order.")

Accordingly, I shall deny the Motion for Reconsideration.

## B. Motion to Amend

Bethany moves to amend under two different provisions of Fed. R. Civ. P. 15. *See* ECF 37-1 at 1-2. Section (a)(2) governs "amendments" to a complaint, whereas section (d) governs "Supplemental Pleadings." Bethany characterizes its proposed amended complaint as an "Amended and Supplemented Complaint" and invokes both Rule 15(a)(2) and 15(d). ECF 37-1 at 1-2. Regardless of how the proposed revisions here are characterized, the legal standard for evaluating the motion is the same. The Fourth Circuit has explained that the "distinction" between amended pleadings and supplemental pleadings "is of little practical significance . . . because the

standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical.  In either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . .'"  *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (citation omitted); *Velasquez v. Wexford Health Sources, Inc.*, PWG-16-1807, 2017 WL 4151278, at *9 (D. Md. Sept. 19, 2017) (citing *Franks*).

I have rejected the Motion for Reconsideration.  Therefore, to the extent that Bethany seeks leave to amend the Complaint so as to "provide[] a framework for" its Motion for Reconsideration, I shall deny the Motion to Amend.

As indicated, Bethany also seeks to amend in order to add a new basis for liability under the breach of contract claim and supporting factual allegations.  In particular, the proposed amendments state that Everest is liable for expenses Bethany incurred in collateral litigation arising out of faulty installation of the Hotel roof and the resulting harm Bethany suffered.  ECF 37 at 63; *see* ECF 37-1 at 1, 5-7.

Before turning to the merits of the Motion to Amend, I shall summarize the proposed factual allegations.

### 1.

According to the proposed amended complaint, Bethany retained I. M. Clifford & Associates, Inc. ("Clifford") "as its construction manager for the [Hotel] construction project." ECF 37 at 19.  Clifford "was charged with inspecting and approving the work of contractors it selected to build the [H]otel."  *Id.*  In that capacity, Clifford retained CCS "and was responsible for inspecting its work to insure that the work was competently done before approving its payment requisitions."  *Id.*  As mentioned, CCS installed the Hotel's TPO roof system, which was manufactured by Firestone.  ECF 27-6 at 2.  Bethany alleges that Clifford "negligently performed

its work as construction manager" in supervising CCS's faulty installation of the insulation boards. ECF 37 at 20.

On December 9, 2019, Bethany filed suit in a Maryland State court against Clifford, CCS, and Firestone (the "State Case").  *Id.*; *see* ECF 37-1 at 4.[7]  The State Case seeks "to recover damages that, in material part, should have been covered by the Everest Security policy but were rejected by Everest Security."  ECF 37 at 20.  Notably, Bethany filed the State Case approximately one year after it filed suit against Everest.

At the time that Bethany filed the Motion to Amend, the State Case was "pending."  *Id.* However, the State court docket shows numerous developments in the case, including a "Stipulation of Dismissal" entered on September 23, 2020, and a "Motion to Reopen Case to Enforce Settlement" filed on November 3, 2020.[8]

In any event, Bethany alleges that Everest's denial of coverage under the Policy "forced" Bethany "to engage in third-party litigation."  ECF 37 at 21.  In its view, the collateral litigation was necessary to "recover damages that should have been paid under the [Policy]."  *Id.*  In addition, Bethany alleges that under the Policy, Bethany was *obligated* to engage in the collateral litigation. *Id.*  In support of this assertion, Bethany cites Section I of the "Commercial Property Conditions" form, which provides, *id.*; ECF 27-4 at 64 (the "Subrogation Clause"):

TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

---

[7] The State court docket shows that two other parties were also named as defendants.  *See* Fed. R. Evid. 201 (governing judicial notice of "adjudicative facts").

[8] After Bethany filed its pending motions, it filed a "Motion to Order Private Mediation." ECF 38.  Bethany asked the Court to order Everest to participate in private mediation with Bethany as well as the defendants in the collateral litigation, and to "share in the expenses of the mediation." *Id.* at 3.  Everest opposed the motion.  ECF 42.  Thereafter, Bethany moved to withdraw ECF 38 (ECF 43), which I granted.  ECF 45.

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

In light of the Subrogation Clause, Bethany asserts: "Any recoveries in the [collateral] litigation . . . for claims covered by the Everest Security policy will benefit Everest Security by either eliminating or reducing the amount it must pay under the [Policy]." ECF 37 at 21.

In Count 2, for "Breach of Contract," the proposed amended complaint claims "the costs and expenses" of the State Case as "damages" from Everest. *Id.* at 24. And, the proposed amended Prayer for Relief asks for "attorneys' fees and litigation costs" incurred in that litigation. *Id.* at 25.

**2.**

Everest contends that the Motion to Amend is governed by Fed. R. Civ. P. 16(b)(4). ECF 49 at 5-6.

Rule 16 concerns scheduling and case management. Rule 16(b)(3) identifies the "[r]equired contents" of a scheduling order. Among other things, a "scheduling order must limit the time to . . . amend the pleadings . . . ." *Id.* And, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Thus, Rule 16 "recognize[s] . . . that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). But, a party seeking leave to amend a pleading after a deadline set by a scheduling order must satisfy Rule 16(b)(4) as well as Rule 15(a)(2). *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106-07 (D. Md. 2013)

On January 31, 2019, I circulated to counsel a proposed scheduling order and scheduled a conference call with counsel to discuss it, set for February 14, 2019. ECF 24. On February 12,

2019, however, the parties submitted a joint status report (ECF 25) stating: "[T]he most efficient way to resolve the case will be to resolve cross-motions for summary judgment at the outset *and before a scheduling order is entered*." *Id.* at 1 (emphasis added). The status report also proposed a briefing schedule for the cross-motions and a truncated discovery period. *Id.* at 1-2. In addition, the status report acknowledged that if Bethany were to prevail in its motion for partial summary judgment as to liability, then further proceedings would be necessary to resolve Bethany's claims for damages and "a scheduling order can be entered on the damages phase only." *Id.* at 2.

Notably, the status report did not address amendment of the suit. It is evident, based on the status report submitted by counsel, that the parties did not contemplate an amendment to the suit. Rather, they contemplated resolution of liability based on cross-motions for summary judgment. By Order of February 12, 2019 (ECF 26), I approved ECF 25.

In Everest's view, in ECF 26 "the Court adopted [ECF 25] as a scheduling order." ECF 49 at 6. Everest is correct, to the extent that I adopted the parties' proposals. But, ECF 26 omitted any mention of amendment of pleadings, notwithstanding the requirement of Rule 16(b)(3). Thus, I shall construe ECF 26 in the light most favorable to Bethany. I conclude that the Motion to Amend is not subject to Rule 16(b)(4). Rather, it is governed only by Rule 15(a)(2).

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The court "should freely give leave when justice so requires." *Id.* However, under Rule 15(a), a court should deny leave to amend in three circumstances: "'when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment

would be futile.'"  *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)); *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Notably, a district court has "broad discretion to deny leave to amend, 'so long as it does not outright refuse to grant the leave without any justifying reason.'" *Edwards v. Genex Coop., Inc.*, 777 F. App'x 613, 622 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).  A court abuses its discretion to grant or deny leave to amend "'by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation.'" *Edwards*, 777 F. App'x at 622 (citation omitted).

Everest argues that the Motion to Amend should be denied on grounds of bad faith, futility, and prejudice.  *See* ECF 49 at 11-26.

### 3.

Under Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson*, 785 F.2d at 510).  A proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted, and thus would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Save Our Sound OBX*, 914 F.3d at 228; *Davison*, 912 F.3d at 690; *see also Martin v. Duffy*, 858 F.3d 239, 247-48 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where the plaintiff's "pleading deficiency cannot be cured by amendment of his complaint"), *cert. denied*, ___ U.S. ___ 138 S. Ct. 738 (2018); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F. 3d 312, 320 (4th Cir. 2010)

(stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss").

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 687-80 (2009) (expounding on the Rule 12(b)(6) standard); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. But, it is axiomatic that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 570; *see Iqbal*, 556 U.S. at 678 (explaining that "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief).

In short, to survive Rule 12(b)(6), the "'plaintiffs' factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging their claims across the line from conceivable to plausible.'" *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) (citation omitted).

Bethany offers two justifications for the proposed claim for recovery of litigation expenses incurred in the State litigation, including legal fees: a common-law doctrine known as the "collateral litigation doctrine" and the Policy's Subrogation Clause. ECF 37-1 at 5-6.

Bethany provides little in the way of analysis with regard to the collateral litigation doctrine. But, it cites a recent decision of the Maryland Court of Appeals that discusses the doctrine: *E. Shore Title Co. v. Ochse*, 453 Md. 303, 330, 160 A.3d 1238 (2017). In *Ochse*, the court reiterated that Maryland follows the "'bedrock principle known as the American Rule,'" under which "'[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract

provides otherwise.'"  *Id.* at 330, 160 A.3d at 1253 (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015)).

The collateral litigation doctrine is an exception to the American Rule.  *Ochse*, 453 Md. at 330, 160 A.3d at 1254.  It "permits Maryland courts to award legal expenses as damages from a separate litigation against another party that was caused by the wrongful acts of the defendant." *Id.* at 330, 160 A.3d at 1254.  To recover collateral litigation expenses as damages, the plaintiff must establish "that such expenses were the natural and proximate consequence of the injury complained of, were incurred necessarily and in good faith, and were a reasonable amount."  *Id.* In that case, the court recognized that the doctrine has been applied where "'the wrongful conduct of a defendant forces a plaintiff into litigation with a third party,'" and where "'the wrong . . . complained of had imposed a *necessary obligation* upon the plaintiff to institute the collateral action[.]'"  *Id.* (citations omitted)

Although Bethany insists that Everest's denial of coverage "forced" Bethany to bring the collateral litigation, *see, e.g.*, ECF 37-1 at 5, Bethany does not address whether the elements of the collateral litigation doctrine are met here.  Even without the benefit of fulsome briefing as to this issue, it does not appear that the collateral lawsuit against the contractors was the "natural and proximate consequence" of Everest's denial of coverage, or that Everest's denial imposed a "necessary obligation" on Bethany to bring the collateral action.  The wrong that Bethany has claimed in this suit is breach of contract.  The natural and appropriate response to an alleged breach of contract is to sue the breaching party, which is precisely what Bethany did in filing suit against Everest.

Moreover, it is not clear that Bethany can rely on the collateral litigation doctrine, given that its claim against Everest sounds in contract, rather than in tort.  In *Chang v. Brethren Mut. Ins.*

*Co.*, 168 Md. App. 534, 553, 897 A.2d 854, 864 (2006), the Maryland Court of Special Appeals instructed: "[C]ases have recognized that the [doctrine] may be applicable in contract as well as tort actions. . . . In a contract action, however, 'special circumstances' are required." (Quoting *Harry's Thrifty Tavern, Inc. v. Pitarra*, 224 Md. 56, 63, 166 A.2d 908, 912 (1961)).  In its analysis, the *Chang* Court determined that the doctrine applied to the contract action in that case.  However, the plaintiff, who was the insured party, was the *defendant* in collateral litigation.  *Chang*, 168 Md. App. at 554, 897 A.2d at 865.  Therefore, the special circumstance identified in *Chang* is inapposite, as Bethany is the plaintiff in its collateral litigation.

Nor is Bethany aided by the decision in *Ochse*, 453 Md. at 339, 160 A.3d at 1259.  There, the plaintiff brought a claim for attorneys' fees incurred in collateral litigation in a tort suit.  In particular, the defendant in *Ochse* was a title examiner company that "was negligent in its title examination."  *Id.* at 312, 160 A.3d at 1243.  The Maryland Court of Appeals agreed with the reasoning of the trial court, which awarded attorneys' fees "pursuant to" a "negligence action, the duty of which arose from [a] contract."  *Id.* at 338, 160 A.3d at 1259.  The court observed: "'There are situations . . . when responsibilities imposed by a contractual relationship are supplemented with tort duties.'"  *Id.* at 339, 160 A.3d at 1259 (citation omitted).  Here, Bethany has not alleged that Everest's breach of contract gave rise to a tort.

As noted, Bethany also contends that the proposed amendments are justified by the Policy's Subrogation Clause.  *See* ECF 37-1 at 6.  In support, Bethany provides a string cite of several decisions from jurisdictions other than Maryland, without any indication as to whether the law in those jurisdictions corresponds to Maryland law.  *See id.*

As Everest persuasively counters, Bethany's argument does not hold up when viewed in light of the facts.  Notably, Everest denied coverage by letter of December 5, 2018.  ECF 27-8.

Although the letter explicitly reserved Everest's rights under the Policy, it made no mention of Bethany's obligations under the Policy to preserve Everest's subrogation rights. *Id.* Bethany does not assert that it attempted to contact Everest to ascertain how, if at all, Bethany had an obligation to preserve subrogation rights in this case. Nor does Bethany explain how it could have been justified in waiting over a year after the denial of coverage to initiate the collateral litigation if Bethany was, in fact, obligated to bring that suit under the Subrogation Clause.

More important, in its summary judgment motion, Everest never asserted a claim that Bethany was barred from recovery based on a failure to pursue a third party. Bethany moved for leave to amend *after* I ruled against Bethany on the issue of Everest's liability under the Policy. By that point, the only remaining issue in the case concerned the damages to which Bethany was entitled, based on my determination that Everest is liable under the Policy for interior water damage and lost business income. In proceedings as to damages, Everest could not have escaped liability by invoking the Subrogation Clause. In my view, Bethany's proposed claim regarding the Subrogation Clause is specious.

Accordingly, I shall deny the Motion to Amend on the basis of futility.

### 4.

Even if Bethany could state a claim for attorneys' fees in the collateral litigation, granting Bethany leave to amend at this late date would unduly prejudice Everest.

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)).

In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), the Court instructed: "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .'" (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)) (alteration in *Laber*). To be sure, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510. In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. These principles counsel in favor of a denial of the Motion to Amend.

In its Reply, Bethany draws on the language quoted above from *Laber*, 438 F.3d at 427, to claim that the proposed amendments "merely add[] an additional theory of recovery to the facts already pled." ECF 51 at 14. However, the theory of recovery for attorneys' fees in the collateral litigation plainly does not rely on the facts already pleaded; the Complaint says nothing of the collateral litigation. And, the parties clearly contemplated resolution of liability based on the allegations in the Complaint.

Bethany now seeks precisely what is proscribed by *Johnson*, 785 F.2d at 510: "[R]ais[ing] a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." And, amendment "may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a

misdirected use of resources and compelling the non-moving party to engage in costly additional discovery." *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009).

That scenario would result here if Bethany were permitted to proceed on its proposed theory; the parties had agreed to an expedited schedule and to a truncated discovery period for the claims as to liability as initially articulated. *See* ECF 26. Nearly two years have elapsed since that time.

In light of my denial of the Motion to Amend on the bases of futility and prejudice, I need not address Everest's argument concerning bad faith.

### C.  Everest's Motion for Summary Judgment

Everest moves for summary judgment as to damages, on which the Memorandum Opinion reserved judgment. Everest contends that Bethany cannot recover damages for interior water damage and lost business income in excess of the Policy's $100,000 deductible, applicable to covered losses caused by a windstorm. ECF 52 at 1-2; *see* ECF 27-4 at 77. In support, Everest has submitted Bethany's "Response to Everest Security Insurance Company's First Request for Admissions," dated June 15, 2020. ECF 52-1. In "Request for Admission No. 7," Everest asked Bethany: "Admit you are not able to provide evidence showing that your claim for interior water damage and your claim for lost business income together exceed $100,000." *Id.* at 3. Bethany responded: "Admitted." *Id.*

In its opposition, Bethany takes issue only with the timing of Everest's summary judgment motion. *See* ECF 53. Bethany asks the Court not to rule on the summary judgment motion before ruling on Bethany's two motions. *See id.* at 2. Notably, Bethany does not dispute Everest's assertion, based on Bethany's admission, that Bethany's damages for interior water damage and lost business income do not exceed $100,000.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  But, "the mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). That said, "a party's 'self-serving opinion

... cannot, absent objective corroboration, defeat summary judgment.'"  *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 433 (4th Cir. 2004)).  In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co*., 499 F. App'x 285, 294 (4th Cir. 2012).

Applying these principles, I conclude that Bethany is entitled to judgment as a matter of law.

Having resolved to deny Bethany's Motion for Reconsideration and its Motion to Amend, the only remaining issue concerns the damages to which Bethany is entitled for interior water damage and lost business income.  *See* ECF 34 at 30, 32; ECF 35.  Bethany concedes that its damages do not exceed the Policy's applicable $100,000 deductible.[9]  Thus, there is no genuine dispute of material fact.  Therefore, as a matter of law, Bethany cannot recover damages in this suit.

### III. Conclusion

For the foregoing reasons, I shall deny Bethany's Motion for Reconsideration (ECF 36) and its Motion to Amend (ECF 37).  And, I shall grant Everest's Motion for Summary Judgment (ECF 52).

An Order follows, consistent with this Memorandum Opinion.

Date: December 1, 2020                                    _____/s/_____
                                                                          Ellen L. Hollander
                                                                          United States District Judge

---

[9] In its reply to Everest's opposition to the Motion to Amend, Bethany indicates that "it has insurance to cover the deductible with Lloyd's of London," but that Lloyd's of London issued a "claim rejection letter."  ECF 51 at 21, n.3.  Bethany makes no mention of this in its opposition to the motion for summary judgment.